UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Jackson,

    Debtor.

_____/

MICHAEL STEVENSON,

    Plaintiff/Appellant,

vs.                                                      Case No. 10-11353

SICILIANO, MYCHALOWYCH,
VAN DUSEN and FUEL, P.C.,

    Defendant/Appellee,

_____/

## **MEMORANDUM AND ORDER AFFIRMING THE BANKRUPTCY COURT**

### **I. Introduction**

This is an appeal in an adversary proceeding in a Chapter 7 bankruptcy case. Plaintiff/Appellant, the Trustee, filed a four-count adversary complaint seeking to recover allegedly preferential pre-bankruptcy transfers from the debtor to Mario Genna, Kimberly Genna, Layia Genna, and Sebastian Genna ("Gennas") and to defendant/appellee The Law Office of Siciliano, Mychalowych, Van Dusen and Fuel, P.C. ("Law Firm"). The Trustee, the Gennas, and the Law Firm filed cross motions for summary judgment.

The bankruptcy court granted the Trustee's motion as to the Gennas, and granted the Law Firm's motion, which prevented the Trustee from recovering against the Law Firm. The Trustee appeals. For the reasons that follow, the decision of the

bankruptcy court will be affirmed.

## II. Background

### A.

On April 16, 2008 the Gennas were awarded a state court judgment against Beverly Jackson ("debtor"), in the amount of $388,260.00. The Gennas were represented in that proceeding by the Law Firm. To assist collection of the judgment debt, the Law Firm garnished several of the debtor's accounts. On July 1, 2008, CANA Mutual Group turned over funds in the amount of $166,298.97. The funds were issued to the Gennas and were deposited into the Law Firm's client trust account.

In August of 2008, the Law Firm and the debtor's state court attorney engaged in correspondence regarding payment of the remainder of the judgment debt and the scheduling of a second creditor's examination. On August 25, 2008, one of the debtor's attorneys communicated to the Law Firm that the debtor had retained a bankruptcy attorney "for her impending bankruptcy." An email sent on August 26, 2008 from the debtor's bankruptcy attorney to an attorney at the Law Firm indicated that the bankruptcy attorney had discussed filing a chapter 7 bankruptcy with the debtor but that the debtor had not firmly decided whether or not to file bankruptcy at that time.

On August 27, 2008, the Law Firm responded and indicated that it remained interested in resolving outstanding issues. Additionally, on August 27, 2008, the state court issued an order approving distribution of a portion of the judgment proceeds obtained as a result of garnishments against the debtor's accounts to the Law Firm. The Law Firm defendants were awarded $73,647.97 in legal fees.[1]

---

[1]The Law Firm disputes the $73,647.97 amount cited by the Trustee and the bankruptcy court. The Law Firm contends that this amount includes a $15,000.00

2

On August 28, 2008, the debtor's bankruptcy attorney informed the Law Firm that the debtor was "not interested in settling the lawsuit and intends to [file] a Chapter 7 bankruptcy case." The debtor's bankruptcy attorney also indicated that he was meeting with the debtor the following week to sign the pleadings and would "file thereafter."

On August 29, 2008, the state court authorized distribution of the remaining judgment proceeds, $109,911.53, to the Gennas. The debtor filed a Chapter 7 petition on September 10, 2008.

### B.

On July 21, 2009, the Trustee filed an adversary proceeding against the Gennas that was later amended to include the Law Firm. The adversary complaint asserted four causes of action: (1) avoidance of a preferential transfer to the Gennas under 11 U.S.C. § 547(b); (2) recovery of the avoidable transfer to the Gennas under 11 U.S.C. § 550(a); (3) recovery of avoided transfers against the Law Firm under 11 U.S.C. § 550(a)(2); and (4) disallowance of all claims under 11 U.S.C. § 502(d) and (j).

As noted above, the bankruptcy court held that the transfer to the Gennas was an avoidable preferential transfer and awarded judgment in favor of the Trustee and against the Gennas in the amount of $168,559.38. As to the Law Firm, the bankruptcy court found that the transfer was not voidable because it was an immediate transferee of the Gennas and received the transfer for value, in good faith, and without knowledge of the voidability of the initial transfer. As such, the bankruptcy court granted the Law Firm's motion for summary judgment and dismissed count 3 of the adversary complaint

---

settlement obtained from Maplewood Condominiums, who was a second named defendant in the state court proceeding. Thus, the Law Firm says that only $58,147.97 would be recoverable by the Trustee. Since the Court agrees that the Trustee cannot recover any monies from the Law Firm, this dispute is not relevant.

and count 4 as it related to the Law Firm. The bankruptcy court also held that any claims by the Gennas were disallowed until the judgment against them was satisfied.

The Trustee appealed.[2]

### III. Standard of Review

The district court reviews factual findings made by a bankruptcy court for clear error, which requires the appellant to demonstrate "the most cogent evidence of mistake of justice." *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs.)*, 106 F.3d 1255, 1259 (6th Cir. 1997). *See also* FED R. BANKR. P. 8013. Conclusions of law are reviewed de novo. *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1023 (6th Cir. 2001); *see also Lopez v. Donaldson (In re Lopez)*, 292 B.R. 570, 573 (E.D. Mich. 2003).

### IV. Analysis

The appeal presents two issues. The first issue is whether the Law Firm was an immediate transferee. The second issue is whether the Law Firm took for value, in good faith, and without knowledge of voidability under 11 U.S.C. § 550(b)(1). Each issue will be addressed in turn.

#### A. Whether the Law Firm is an Immediate Transferee

The Trustee says that the Law Firm was an initial, not an immediate, transferee because it received funds directly from the debtor as opposed to receiving them from a transferee of the debtor.

An *initial* transferee is "one who receives money from a person or entity later in

---

[2]The Law Firm filed a motion to dismiss the appeal on the grounds the Trustee did not timely file the "items on appeal" and "statement of issues on appeal." The Court denied the motion. *See* Memorandum and Order filed July 1, 2010 (Doc. No. 15).

4

bankruptcy, and has dominion over the funds. A mediate or *immediate* transferee is simply one who takes in a later transfer down the chain of title or possession." *First Nat'l Bank of Barnsville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 722 (6th Cir. 1992). 11 U.S.C. § 550(a) provides "to the extent that a transfer is avoided . . . the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property from . . . the initial transferee." Thus, if the Law Firm was an initial transferee, the transfer could be avoided as preferential under 11 U.S.C. § 547(b).[3]

The Trustee's argument that the Law Firm was an initial transferee because it received funds from the debtor pursuant to state issued garnishment orders is misplaced. This argument mischaracterizes the nature of the transaction. The garnishment of the debtor's accounts was done to satisfy a judgment debt on behalf of the Gennas, the Law Firm's client. The Law Firm merely held the funds for the Gennas in its client trust account until a state court order could be obtained allowing disbursement. The Law Firm took from the Gennas in satisfaction of its contractual fee arrangement with the Gennas for its representation of the Gennas in their suit against debtor. Thus, the Law Firm was not an initial transferee and the bankruptcy court was correct in concluding the same.

Other courts have similarly found that a law firm holding funds for a client in its trust account does not make the law firm an initial transferee. *See SKK Liquidation*

---

[3]11 U.S.C. 547(b) provides in pertinent part:
[T]he trustee may avoid any transfer of an interest of the debtor in property—(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made—(A) on or within 90 days before the date of the filing of the petition . . . .

5

*Trust v. Green & Green, LPA (In re Spinnaker Industries, Inc.)*, 328 B.R. 755, 767 (S.D. Ohio 2005) (holding that Green & Green's acceptance of funds on behalf of a client in satisfaction of a debt owed to client did not give Green & Green sufficient dominion and control to make it an initial transferee); *Lifecare Technologies, Inc. v. Berman Law Firm, P.A. (In re Lifecare Technologies, Inc.)*, 305 B.R. 88, 92 (M.D. Fla. 2003) (holding that Berman firm was not an initial transferee because it was not a creditor, but a firm representing a creditor of plaintiff, and did not exercise dominion and control over the funds awarded to its client); *Belford v. Breck (In re Medical Cost Mgmt., Inc.)*, 115 B.R. 406, 408 (D. Conn. 1990) (holding that money garnished to satisfy judgment debt owed to Breck that was routed to Breck's attorney, who deducted his fee therefrom, did not make attorney an initial transferee because attorney was "merely a conduit" who did not have the right to control the funds); *Moskowitz v. Unitrac (In re Fabric Buys of Jericho, Inc.)*, 33 B.R. 334, 337 (S.D. N.Y. 1983) (holding that the "Hopgood firm acted as a mere conduit of funds . . . . Here Unitrac had the direct business dealings with Fabric Buys that gave rise to the debt, subsequent suit, and the allegedly preferential payment. That such amount was funneled through the escrow account does not make Unitrac's lawyer an initial transferee.").

Here, the Law Firm obtained funds from the Gennas' judgment proceeds in satisfaction of the legal fees owed to it by the Gennas. The garnishment checks were issued to the Gennas. It is irrelevant that the funds were initially deposited into the Law Firm's trust account because the Gennas maintained dominion and control over the funds. The Law Firm could not lawfully spend the money however it wanted. Thus, the Law Firm took from the Gennas, not from the debtor. The bankruptcy court did not err in holding that the Law Firm was an immediate, and not an initial, transferee.

6

## B. Whether the Law Firm Took for Value, in Good Faith, and Without Knowledge under 11 U.S.C. § 550(b)(1)

11 U.S.C. 550(b)(1) states that "[t]he trustee may not recover under section (a)(2) of this section from—(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."[4]

As to the elements of "for value" and "good faith," it is clear that the Law Firm took for value because the funds received from the Gennas were in exchange for legal services. While the case law concerning the good faith element is unsettled because the bankruptcy code does not define good faith,[5] the Trustee does not allege any fraud underlying the transfer from the Gennas to the Law Firm. Thus, the issue is whether the Law Firm took "without knowledge." The bankruptcy code does not define the "without knowledge" element of the immediate transferee's defense under 11 U.S.C. § 550(b)(1).

The bankruptcy court rejected the Trustee's argument that knowledge of an impending bankruptcy at the time of the transfer is sufficient to support avoidance as a matter of law. In so doing, it explained why the cases cited by the Trustee, which the Trustee again relies on here, were not persuasive, stating:

This Court finds these cases problematic as support for the proposition

---

[4] 11 U.S.C. § 550(a)(2) allows the trustee to recover property, or the value thereof, from "any immediate or mediate transferee of such initial transferee."

[5] Some courts have concluded that the good faith and without knowledge elements are redundant. *See Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 897 (7th Cir. 1988); *IRS v. Nordic Village Inc. (In re Nordic Village)*, 915 F.2d 1049, 1056 (6th Cir. 1990), *rev'd on other grounds*, 503 U.S. 30 (1992). Other courts have stated that lack of good faith may be inferred if the recipient had enough knowledge to prompt a reasonable person to investigate the potential voidability. *SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Industries, Inc.)*, 328 B.R. 755, 769 (S.D. Ohio 2005) (quoting *Bonded Fin. Servs. Inc.*, 838 F.2d at 898-99).

7

> that an immediate transferee is liable to the bankruptcy estate merely
> because he or she had knowledge of a potential bankruptcy. None of
> these cases actually reach that conclusion with regard to the specific
> immediate transferee in the case.

The Court agrees that the Trustee's cases are inapposite for the reasons expressed by the bankruptcy court.

As to the requirement of "without knowledge," the Sixth Circuit has stated that "[t]he requirement of 'knowledge' is satisfied if the transferee 'knew facts that would lead a reasonable person to believe that the property transferred was recoverable.'" *IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049, 1055 (6th Cir. 1990), *rev'd on other grounds*, 503 U.S. 30 (1992) (citations omitted). *See also* 5 *Collier on Bankruptcy*, ¶ 550.03[3] (Alan N. Resnick, et. al. eds. 15th ed.) (stating that "[t]he Commission [on Bankruptcy Laws of the United States] intended the standard to mean 'if the transferee knew facts that would lead a reasonable person to believe that the property [transferred] was recoverable.'") (citation omitted). The Seventh Circuit explained in *Bonded Financial Services Inc. v. European American Bank* that knowledge "is not the same as a duty to investigate . . . . A transferee that lacks the information necessary to support an inference of knowledge need not start investigating on his own." 838 F.2d 890, 898 (7th Cir. 1988).

Here, the Law Firm was put on notice that the debtor was *contemplating* bankruptcy prior to the August 27, 2008 state court judgment allowing disbursement of the Gennas' judgment proceeds to the Law Firm for its attorney fees. The Trustee provides nothing more than bald assertions to argue that the communications made to the Law Firm prior to or on August 27, 2008 showed the debtor's intent to file a bankruptcy case. The evidence, consisting of emails and affidavits provided by the Law

8

Firm clearly indicate that before August 28, 2008 the Law Firm knew only that the debtor was contemplating bankruptcy.[6] As the bankruptcy court stated, "the degree of knowledge" required to defeat the without knowledge element of the 11 U.S.C. § 550(b)(1) defense must be "something more than mere knowledge of a potential bankruptcy."

If the debtor's bankruptcy attorney communicated to the Law Firm prior to August 27, 2008 that debtor had decided to cease settlement discussions because debtor intended to file a bankruptcy case, the Law Firm may have had knowledge of voidability. In that case, the law firm would likely have known "facts that would lead a reasonable person to believe that the property transferred was recoverable." *IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049, 1055 (6th Cir. 1990), *rev'd on other grounds*, 503 U.S. 30 (1992) (citations omitted). However, that did not happen. At the time of the transfer to the Law Firm, the Law Firm knew only that debtor was contemplating settlement as well as bankruptcy. Because the Law Firm believed in good faith that settlement negotiations were promising and that debtor's bankruptcy was a mere possibility at the time of the transfer, the Law Firm did not know facts that would lead a reasonable person to believe that the property transferred was recoverable. The

---

[6]The affidavit of Lindsay Kennedy James, an attorney with the Law Firm defendant, indicates that her interpretation of the August 26, 2008 email from debtor's bankruptcy attorney was as follows: "I understood him to be stating that there were ongoing discussions regarding possible settlement . . . . Mr. Glusac also appeared to reference certain contingencies regarding Jackson's filing for bankruptcy." Similarly, the affidavit of Timothy R. Van Dusen, a principal of the law firm defendant, states that, "As of August 27, 2008, I did not believe that bankruptcy would benefit Ms. Jackson. Since the Gennas were willing to stay further collection . . . I assumed that Ms. Jackson would accept my offer to pursue good faith settlement discussions with the Gennas."

Law Firm's knowledge of potential voidability after the transfer is irrelevant.[7]

### V.  Conclusion

The bankruptcy court surveyed the relevant case law and examined the legislative history to come to the conclusion that the Law Firm's knowledge of a potential bankruptcy was not sufficient to defeat a defense under 11 U.S.C. § 550(b)(1). The bankruptcy court's careful decision was legally sound and in no way clearly erroneous.  Accordingly, decision of the bankruptcy court is AFFIRMED.

SO ORDERED.


      S/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated:  August 9, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 9, 2010, by electronic and/or ordinary mail.

      S/Michael Williams
      Relief Case Manager, (313) 234-5160

---

[7]The Trustee also argues that the bankruptcy court impermissibly shifted the burden of proof to it.  This argument lacks merit.  Nothing in the bankruptcy court's opinion indicates that the bankruptcy court believed the Trustee had the burden of proof.  Rather, the bankruptcy court evaluated the record and determined that the Law Firm had satisfied the requirements of § 500(b)(1).